IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC WAYNE THOMAS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 21-4497 |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | **NOT FOR PUBLICATION** |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant. | : | |

### MEMORANDUM OPINION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                                                June 1, 2023

This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied the application of Eric Wayne Thomas ("Claimant") for Disability Insurance ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act").  Presently before the Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br.") (Doc. 63); Defendant's Response to Request for Review of Plaintiff ("Def. Br.") (Doc. 67); and Plaintiff's Reply Brief ("Pl. Reply") (Doc. 75); together with the record of the proceedings before the Administrative Law Judge ("ALJ") and the Appeals Council (hereinafter "R.") (Doc. 59).  Plaintiff asks the Court to vacate the ALJ's decision and remand the matter for additional administrative proceedings.  The Commissioner seeks the entry of an order affirming the decision of the ALJ that Plaintiff was not disabled.  For the reasons set out below, we will vacate the decision of the ALJ and remand the matter for further administrative proceedings.

1

I.         PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Claimant filed the applications for DIB and SSI with which this appeal is concerned on October 26, 2018, alleging disability since May 23, 1997, more than 20 years earlier. At the time he filed his applications, he was represented by an attorney and indicated that he was disabled due to depression and post-traumatic stress disorder (PTSD), although his medical records also showed persistent complaints of back issues. He had a prior work history in the military and operating heavy equipment. He had some periods of work between 1998 to 2001 and again from 2003 to 2006.

After the state agency denied his claims initially and on reconsideration, Claimant requested an administrative hearing before an ALJ. Shortly after his hearing was scheduled, however, counsel withdrew from the representation, citing "extraordinary circumstances and professional considerations" that counsel could not disclose, although counsel did cite to a lack of responsiveness by Claimant. (R. 243.) The hearing was convened on January 13, 2020 before the Honorable Marc Silverman. The ALJ offered a continuance for Claimant to obtain new counsel, but he opted to proceed *pro se*.

Claimant testified at the hearing that a back injury was at the root of his problems and what kept him from working. (R. 96-99.) He made clear that he did not "view [himself] as someone who's mentally ill," (R. 103), but his past medical history was significant for mental health concerns. *See, e.g.,* Pl. Br. at 5-7 (describing inpatient and involuntary admissions for mental health treatment dating to 2001, as well as court-ordered counseling in 2008 following child custody dispute). Claimant's mother, with whom he lived, attended the hearing with him but did not testify. A vocational expert ("VE") testified about Claimant's past work and answered hypothetical questions posed by the ALJ about other jobs. The ALJ ultimately issued an unfavorable decision on February 18, 2020.

Plaintiff requested review in the Appeals Council. In a remand order issued on January 27, 2021, that body concluded that two errors required that the hearing decision be vacated. The first error, and the only one relevant to this appeal, concerned the fact that the ALJ's decision did not address two disorders that were documented in the medical record. (R. 202.) The Appeals Council directed the ALJ upon remand to analyze and discuss those conditions. The Appeals Council also committed the ALJ to take several other actions, specifically: (1) "[o]btain additional evidence concerning the claimant's medically determinable mental impairments in order to complete the administrative record," including, "if warranted," a consultative examination; (2) evaluate the two disorders in accordance with the particular technique set forth in the Regulations for mental impairments; and (3) "[f]urther, if necessary, obtain evidence from a medical expert related to the nature and severity of[,] and functional limitations resulting from[,] the claimant's medically determinable mental impairments[.]" (R. 203.)

The ALJ promptly scheduled the matter for a new hearing. He did not, however, refer Claimant for any further consultative examination nor psychological testing, which was last undertaken by the state agency in March of 2019. The ALJ and hearing office staff also advised Claimant via multiple modalities of his right to representation, but he again chose to proceed without the assistance of counsel. Both Claimant and a new VE testified in the second hearing, which was conducted by telephone on August 16, 2021 due to pandemic restrictions. No medical expert was scheduled to participate in the hearing.

As at his first hearing, Claimant testified that his disabling impairment related to his back, in addition to hypertension. (R. 58.) He strongly objected to the notations in the treatment records from the VA Medical Center that were referenced in the Appeals Council remand order. While the ALJ attempted to clear up some of Claimant's misperceptions about the nature of one of the

3

disorders, Claimant made known his position that he had been subjected to a "misdiagnosis" with a condition "that [was] not commensurate with [his] persona." (R. 57.) This position was also conveyed in extensive correspondence that Claimant sent to SSA offices, the state agency, the assigned ALJ, the Appeals Council, his former attorney's office, his health insurance company, public benefits offices, and various veterans' services offices. *See* Pl. Br. at 10-11 (cataloguing correspondence by citations to the Record and highlighting some of Claimant's statements).

On October 4, 2021, ALJ Silverman issued his second hearing decision, which was again unfavorable to Claimant. We discuss that decision in greater detail below. Claimant sought further review in the Appeals Council, but that body did not grant his request, leaving the ALJ's second decision as the final determination of the Commissioner. (R. 1-5.) Claimant then brought this civil action, *pro se.*[1]

In accordance with the standing procedural order in this district, the Commissioner produced the certified administrative record and counsel filed briefs in support of and in opposition to Claimant's request for review of the ALJ's second decision. (Docs. 63, 67, 75.) The matter is fully

---

[1] Claimant's initial submission, while referencing the Appeals Council decision, also referred to Medicaid denials and service-connected disability recognition that he sought from the Veterans Administration. It also reflected his complaints about medical providers. (Doc. 1.) We endeavored to explain to Claimant that we were construing his complaint as a request for review under 42 U.S.C. §§ 405(g) and 1383(c)(3), for which we have jurisdiction to review final decisions of the Social Security Administration. We provided Claimant with our district's standard form complaint for review of Social Security cases, which he completed. (Doc. 50.) In response to a notice from the Court about the availability of attorneys to assist in federal court disability appeals, Claimant moved for appointment of counsel. (Doc. 15.) An attorney who specializes in this area of the law, who has appeared before this Court many times, and who is held in high regard among his peers agreed to represent Claimant. We are grateful to counsel for accepting this appointment. His performance has been commendable, particularly given very challenging circumstances.

briefed and ready for disposition.[2]

## II.　LEGAL STANDARDS

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This Court must determine whether substantial evidence supports the Commissioner's final decision that the claimant was not disabled. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). It is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The Commissioner's factual findings must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C. § 405(g)); *Rutherford*, 399 F.3d at 552. The review of legal questions presented by the Commissioner's final decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III.　DECISION UNDER REVIEW

The issue before the ALJ as to the DIB claim was whether Claimant was disabled under section 216(i) and 223(d) of the Act at any time after the alleged onset of disability of May 23, 1997

---

[2] Even though he has been represented by counsel since the briefing stage of this litigation, Claimant has continued to serve the Court with correspondence, consistent with his approach when his case was before the Agency. These submissions have been insightful in their own way but are not appropriate where Claimant has a skilled advocate who has entered his appearance on Claimant's behalf and at the Court's request.

and before his insured status expired on December 31, 2012, and, if so, whether the disability continued through the date of decision (October 4, 2021). As to the SSI claim, the ALJ was required to evaluate whether Claimant was disabled as of his SSI application date of October 26, 2018 and through the date of decision.

At the same time, however, and as he recognized at least in part, the ALJ was also expected to undertake particular actions in light of the Appeals Council remand order. He characterized that order as requiring him to analyze and discuss the two "potential" mental health disorders to which the remand order had drawn attention. (R. 11.)[3] He also recognized that the Appeals Council "indicated that [he] should obtain additional evidence to complete the record and give further consideration [to] the claimant's maximum residual functional capacity." (*Id*.) The ALJ made no explicit reference in the telephonic hearing or in his written decision as to whether or not he considered the necessity of obtaining evidence from a medical expert regarding Claimant's mental impairments. *Cf.* R. 203 (Appeals Council order referring to this).

As the ALJ approached his decision as to whether Claimant was disabled under his DIB and/or SSI applications, he relied upon the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). At Step One, he found that Claimant had engaged in periods of substantial gainful activity during time periods that were relevant to his DIB claim. (R. 14, Finding No. 2.) However, as there were continuous periods of at least 12 months since the alleged DIB onset date, as well as the entirety of the relevant period for the SSI claim, in which Claimant

---

[3] The Appeals Council order did not use the "potential" qualifier when referring to these conditions.

had not engaged in substantial gainful activity, the analysis continued beyond Step One. (R. 15, Finding No. 3.) At Step Two, he found that Claimant had several medically-determinable impairments – including degenerative disc disease, left ulnar neuropathy, obesity, depressive disorder, and anxiety disorder – that significantly limited his ability to perform basic work activities. (*Id.*, Finding No. 4.)[4] At Step Three, he concluded that the severe impairments identified at Step Two, whether considered individually or in combination, did not satisfy the severity of any listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1, including the particular listings for disorders of the skeletal spine with nerve root compromise, lumbar spinal stenosis, and peripheral neuropathy. (R. 17-19 & Finding No. 5.) The ALJ also considered whether evidence of non-exertional impairments, either singly or in combination, met or medically equaled the criteria of three particular listings: 12.03, 12.04, and 12.06. He found that they did not, as the listings required a degree of limitation at the "extreme" level in at least one area of functioning or, alternatively, limitation at the "marked" level in two areas, and Claimant had no more than a "moderate" degree of limitation in the broad areas of functioning set out in the listings. (R. 19-21.)

The ALJ then proceeded to assess Claimant's residual functional capacity ("RFC"), which reflects an individual's maximum ability to do physical and mental work activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. §§ 416.920(e), 404.1545. He determined:

> 6. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as

---

[4] In a finding that we discuss in greater depth below, the ALJ determined that several other conditions could *not* be characterized as "medically determinable" impairments as to Claimant, including schizoaffective disorder, post-traumatic stress disorder (PTSD), delusional disorder, and personality disorder. (R. 16.)

> defined in 20 CFR 404.1567(b) and 416.967(b) except: climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; stoop, kneel, and crouch occasionally; never crawl; bilateral reaching overhead and in all other directions is limited to frequent; bilateral handling and fingering is limited to frequent; must avoid concentrated exposure to extreme cold, humidity, wetness, and vibration; *limited to simple, routine tasks; can make simple work-related decisions; no more than occasional interaction with supervisors, co-workers, and the general public, but would be able to have frequent interaction during a 30-day training period; and low stress work, which is defined as routine work with no more than occasional changes in the work.*

(R. 21, Finding No. 6 (bold removed, italics added).)   The ALJ then applied this finding at Step Four.  He determined that Claimant could not perform past relevant work, as Claimant performed at the "heavy" exertional level in his past position, which was precluded by his RFC for a restricted range of "light" work. (R. 32, Finding No. 7.)

At Step Five, the ALJ assessed whether Claimant was capable of performing any other jobs that exist in significant numbers in the national economy considering his age (as a "younger individual" as of his DIB alleged disability onset date in 1997 and as a person "closely approaching advanced age" by the time of the hearing in 2021), his education and work experience, and his RFC.  At the hearing, the VE had testified that a hypothetical individual with the vocational profile described by the ALJ could perform the functions of several representative unskilled occupations at the light exertional level, including bench assembler, inspector, and housekeeping cleaner. (R. 33.) Based upon this testimony, the ALJ concluded that Claimant was capable of making a successful adjustment to other work in the national economy and thus was not disabled from the May 23, 1997 date through the date of decision.  (R. 34 & Finding No. 12.)

## IV. DISCUSSION[5]

Plaintiff articulates three grounds for remand. First, he asserts that the ALJ "misapplied the law" as he reached his finding that schizoaffective disorder and personality disorder were not among Claimant's medically-determinable impairments. (Pl. Br. at 3.) Second, he argues that the ALJ's RFC finding failed to accommodate certain limitations that the ALJ recognized in Claimant at Steps Two and Three, specifically those concerning limitations in concentration, persistence, and pace. (Pl. Br. at 13.) Finally, Plaintiff contends that the ALJ's decision must be vacated because ALJ Silverman's appointment by former Acting Commissioner Nancy Berryhill did not satisfy the requirements of the Appointments Clause as interpreted by the United States Supreme Court in recent cases. (Pl. Br. at 19.)[6]

---

[5] We are using the term "Plaintiff" in reference to the counseled advocacy position on behalf of Claimant. Through his prior self-representation and in correspondence that he has continued to submit to the Court, Claimant has voiced his disagreement with the correctness of some of the diagnoses referenced by counsel in the briefs here that were applied to him by medical providers or evaluators in the past. Our resolution of this case does not require us to take any position on the diagnostic questions, which are beyond our purview. We note, however, that matters of strategy in appellate litigation are appropriate matters for counsel to spearhead. We also wish to assure Claimant that this decision is not meant to slander or stigmatize him in any way.

[6] Plaintiff's contention is that ALJ Silverman's corrective "re-appointment" on July 16, 2018, which was done *en masse* by Berryhill following the Supreme Court's June 21, 2018 decision in *Lucia v. SEC*, was a legal nullity because Berryhill herself was not, at that time, endowed with the authority to take such action within the Agency. This challenge thus principally focuses on the status of Berryhill as Acting Commissioner rather than the ALJ and arises from Plaintiff's interpretation of the Federal Vacancies Reform Act, 5 U.S.C. § 3346, and its application to the leadership of the Social Security Administration following the resignation of Commissioner Carolyn Colvin on January 20, 2017. Under Plaintiff's interpretation of the FVRA, Berryhill's authority as Acting Commissioner expired by operation of law on November 16, 2017.

While we appreciate counsel's advocacy and creative argument as to the third issue raised, we do not find it to be in the interests of judicial economy to resolve this case on that ground. We need not and therefore will not enter the debate as to the statutory interpretation questions raised by Plaintiff. With respect to the second issue raised, we note that it becomes moot if we agree with Plaintiff's remand argument as to the first issue presented. Therefore, we start, and ultimately end, there. We agree with Plaintiff that the ALJ's decision must be vacated for his deficient analysis of the impairments identified by the Appeals Council.

### A.     The ALJ did not comply with the remand order, and the decision that followed therefore cannot be said to be supported by substantial evidence.

The crux of Plaintiff's first argument is that the ALJ erred in his findings concerning non-exertional impairments, particularly the two conditions referenced in the Appeals Council mandate. Plaintiff notes that because the ALJ explicitly determined that these impairments were *not* "medically determinable impairments," no functional limitations that might be viewed as resulting from those potential conditions were included in the RFC finding.

#### 1.     The ALJ's analysis

The discussion by the ALJ in the section of the decision in which he explained why he determined that Claimant's medically determinable impairments did not include several other conditions, including the two that had been specifically referenced by the Appeals Council, is particularly salient. The ALJ described "some remote mental health history" that reflected Claimant's refusal of both outpatient mental health treatment and medications recommended by multiple doctors. He also commented on a lack of recent mental health treatment and recent mental status examinations in the record noted as "generally unremarkable" and Claimant's denial of psychotic symptoms. The ALJ also noted Claimant's encounter on June 15, 2019 with a family

medicine physician at the VA, from whom Claimant hoped to obtain a certification of service-connected physical disability, who gathered that Claimant suffered from delusional disorder and personality disorder. The ALJ continued:

> In addition, during the hearing on August 16, 2021, *the claimant was very articulate and adamant when discussing that he does not have a schizoaffective disorder or personality disorder as an impairmen*t, and he repeatedly stated that his disability claim is based solely on his physical impairments, symptoms and limitations. He testified that he does not want the perceived stigma these diagnoses may carry, and he stated that such a diagnosis would damage his reputation and is not true.
>
> Although consideration was given to the evidence referenced by the Appeals Council—along with all the evidence in the medical records—*deference is given to the claimant's assertion at the hearing on August 16, 2021, and in other documents, that he not be found to have a schizoaffective disorder or personality disorder* (hearing record, 24F, 66E). *Therefore, only anxiety and depression are found to be severe medically determinable impairments*, based upon the medical records and the results of the psychology consultative examination. I note that even if the other potential diagnoses were found to be severe medically determinable impairments, the limitations caused by them would be addressed by the mental limitations resulting from the claimant's depression and anxiety, which have been included in the residual functional capacity assessment in Finding 6 and would not result in any additional or more severe restrictions.

(R. 16-17 (emphasis added).)

Plaintiff criticizes the ALJ for deferring to Claimant's statements about his impairments, particularly in light of the evidence of diagnoses of (however misguided Claimant believes them to be), and in one case hospitalization for, these conditions. Plaintiff also notes that the very symptoms associated with these conditions account for Claimant's insistence that he does not suffer from them. *See* Pl. Br. at 4-5. We agree that the ALJ's "deferential" approach was not based on any requirements of the Regulations and is not otherwise supported in the disability evaluation scheme.

We view this error as manifesting in both the listings and RFC findings, as we discuss below, and cannot be characterized as harmless.

### 2. Listings analysis

First, when describing his Step Three finding that Claimant did not have any impairments that met or equaled the Listings, the ALJ made what appears to be something of an obligatory reference to particular listings.[7] His analysis of the degree of functional impairment from the disorders he identified, however, appears to have been colored by his lack of understanding of how the Claimant would be affected by the two specific disorders that were the focus of the remand. For example, when considering the degree of the Claimant's limitations in interacting with others, the ALJ noted that Claimant "alleged no limitations regarding getting along with others" and seemed to take at face value Claimant's report to a consultative examiner that he had "good family relationships and … would like to socialize but did not have the opportunity." (R. 20.) Yet elsewhere the record reflected that he had taken his daughter away for a week in violation of a custody arrangement, which led to a 12-month incarceration (R. 839); that he believed police were treating him unfairly in the enforcement of a subsequent child visitation arrangement (*id.*); that he had been terminated at a previous job "for whatever reason," which "could have been that … someone didn't like [him]" (R. 92, Hr'g Test. Jan. 13, 2020); that he felt that he was "being harassed" at the VA Medical Center (R. 53, Hr'g Test. Aug. 16, 2021); and that he had "had an

---

[7] The ALJ considered whether some additional listings – but not *all* of the applicable ones – were implicated by the exhibits in the record to which the Appeals Council directed his attention. *Compare* R. 202 (remand order identifying Listings 12.03 and 12.08 as requiring discussion) *with* R. 19-21 (ALJ decision addressing 12.03 but not 12.08).

incident with" someone at another health system where they were "making false allegations against him and it turned into a little bit of a mess." (*Id.* at 53-54). And while the ALJ apparently found it noteworthy that medical records "indicate he was able to go to the gym and lift weights" (R. 20), the ALJ recognized that there was another side to the pleasant picture the Claimant painted:

> However, the records reflect that the claimant had some difficulty interacting with medical providers – as he acknowledged during the hearing – and he stormed out on at least one occasion, as noted below. In addition, the claimant had some difficulty answering questions during the hearing and had to be redirected multiple times. The claimant also sent some increasingly hostile correspondences to the Agency (see, e.g., 66E).

(R. 20.) Somehow in the next breath, however, the ALJ concluded: "Overall, the evidence supports no more than a moderate limitation in this area of functioning" concerning interactions with others. (R. 20.)

We cannot reconcile the ALJ's conclusion with the evidence of record. We understand the deference that is built into the standard of review of factual findings by an administrative agency. But we are hard-pressed to give deference here where the ALJ's stated approach – that Claimant's medically determinable impairments would *not* include those highlighted by the Appeals Council – led him to turn a blind eye to potentially "marked" or "extreme" limitations arising from those impairments. The character of those limitations also may be materially different from those attributable to the anxiety and depression conditions that the ALJ recognized as severe impairments and sought to accommodate in his RFC finding.[8] Against the backdrop of the record before the ALJ,

---

[8] The statement by the ALJ that there would have been no more limitations reflected in the RFC had additional impairments been acknowledged to be among Claimant's medically-determinable
*(continued…)*

and his failure to carry out the mandate of the Appeals Council as to consideration of Listings 12.03 and 12.08, we cannot say that the ALJ's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

### 3. RFC analysis

The deficiency in the ALJ's analysis arising from his error as to the non-exertional impairments is also manifest in the RFC finding. The ALJ justified his RFC finding with the following:

> As noted above, the claimant alleged that he was disabled based solely on his physical impairments. However, the record as a whole—including the results of the consultative examination—supports a finding that the claimant's depression and anxiety are severe impairments that would limit the claimant to simple, routine tasks, simple work-related decisions; no more than occasional interaction with supervisors, co-workers and the general public (after frequent interaction during a 30-day training period) and low-stress work. *No additional limitations are supported by the medical evidence of record as a whole, which reflects conservative, routine and sporadic treatment with significant treatment gaps and a history of noncompliance by the claimant.* In conclusion, the residual functional capacity described above is supported by the medical evidence of record and is the most accurate assessment of the claimant's work-related capabilities.

(R. 32 (emphasis added).)

---

impairments (R. 17) is simply not plausible. We have reviewed the diagnostic criteria of the impairment addressed by Listing 12.06 – the condition that the ALJ ignored post-remand – which is further described in detail in § 12.00B(7). If the ALJ had considered this criteria, he may well have found a far greater degree of limitation in the Paragraph B areas of functioning, which could either alter the Step Three determination or which may have led to adjustments to the non-exertional and non-postural capacities set out in the RFC that would have precluded substantial gainful activity.

We must note here that the very circumstances that the ALJ recites as indicative of the *absence* of impairment – "significant treatment gaps and a history of noncompliance" – also support the *presence* of the particular conditions that the ALJ had been directed to consider. *See, e.g.,* Listing 12.08 ¶ A criteria & ¶ 12.00B7. Moreover, the interactions between Claimant and his various health care providers, consultative examiners, Social Security personnel, and continuing with his engagement with this Court and current counsel, all highlight the difficulties Claimant would have with "frequent" interaction with others for a 30-day training period and even the "occasional interaction with supervisors, co-workers, and the general public" after the onboarding period. *See* R. 21, Finding 6 (ALJ's RFC determination expecting Claimant to be capable of this). It is difficult to imagine how Claimant would be able conform to normal workplace expectations. The ALJ's Step Five finding based upon this RFC formulation does not pass substantial evidence muster.

On remand, we would encourage the Commissioner to obtain an opinion from a medical expert following a review of the record, as was previously suggested by the Appeals Council. This would also prove useful in exploring any questions of onset. An appropriate order follows.